

AmTrust North America

An AmTrust Financial Company

February 17, 2016

***VIA E-MAIL & CERTIFIED MAIL -***
***RETURN RECEIPT REQUESTED***

Roderick Linton & Belfance LLP
Kurt Weitendorf
50 S. Main Street
Suite 1100
Akron, OH 44308-1831
kweitendorf@rlbllp.com

Jason D. Wallace
Roderick Linton & Belfance LLP
50 S. Main Street
Suite 1100
Akron, OH 44308-1831
jwallace@rlbllp.com

Daniel R. Bache
Roderick Linton & Belfance LLP
50 S. Main Street
Suite 1100
Akron, OH 44308-1831
jwallace@rlbllp.com

| | | |
|---|---|---|
| **Re:** | **Claim No.:** | **2151281** |
| | **Insured:** | **Roderick Linton & Belfance LLP** |
| | **Policy No.:** | **WPP1096239 01** |
| | **Claimant:** | **Akron Board of Education** |

Dear Messrs. Weitendorf, Wallace and Bache:

This letter will provide the coverage position of Wesco Insurance Company ("Wesco") regarding the lawsuit filed by the Akron Board of Education (the "Board") against Roderick Linton & Belfance LLP (the "Roderick Firm") and attorneys Jason D. Wallace ("Wallace") and Daniel R. Bache ("Bache") pending in the U.S. District Court for the Northern District of Ohio. Based upon our review of the information provided to us and the terms of the Wesco policy, Wesco must respectfully disclaim any duty to defend or indemnify the Roderick Firm, Wallace or Bache in connection with the Board's lawsuit.

## I.     FACTUAL BACKGROUND

The Board has filed its "Complaint for Recovery of Fees Pursuant to the Individuals with Disabilities Education Act (IDEA)" in the U.S. District Court for the



Northern District of Ohio, case no. 16-cv-188-BYP (the "Fee Action"). The Fee Action names Wallace, Bache and the Roderick Firm as defendants and is brought pursuant to 20 U.S.C. § 1415(i)(3)(B)(i)(II), which provides that a Court may award reasonable attorneys' fees to a prevailing party who is a local education agency against the attorneys of a parent who files a complaint or subsequent cause of action that is frivolous, unreasonable, or without foundation. According to the complaint in the Fee Action, on December 15, 2014 Bache filed an IDEA due process complaint (the "due process complaint") on behalf of the parents of J.B. against the Board which contained various allegations regarding the actions of the Akron City School District ("District"), including that the District failed to provide the student with a free appropriate public education and that the District failed to protect the student despite the fact that he suffers from several disabilities. The complaint alleges that the due process complaint was frivolous, unreasonable and/or without foundation and that the claims were based on factually erroneous allegations. The complaint alleges that the Board repeatedly attempted to settle the matter, but the defendants would not engage in any settlement negotiations. It is alleged that, at a March 25, 2015 hearing, Bache appeared 50 minutes late and without Wallace, who was lead counsel. At this hearing, the Impartial Hearing Officer ("IHO") granted the Board's motion for a directed verdict on certain issues and ordered defendants to file post hearing briefs addressing what evidence they had to establish the elements of the remaining claims. The complaint alleges that, on June 11, 2015, the IHO issued a decision ruling in favor of the Board on every claim and dismissing the due process complaint in its entirety. This ruling stated that the due process complaint was "hastily thrown together" with "very little thought, research or preparation" and that the IHO was "profoundly disturbed" by the errors in the due process complaint.

According to the complaint, the defendants then appealed the IHO's decision to the Ohio Department of Education for State Level Review. After the IHO's decision was affirmed on November 9, 2015, defendants filed an appeal with the Common Pleas Court, which was then removed to federal court. The complaint alleges that the Board, as the prevailing party, is entitled to fees pursuant to 20 U.S.C. § 1415(i)(3)(B)(i)(II) for work performed in relation to defendants' continued litigation of their meritless claims. Specifically, the Board seeks $26,673.26 in costs and reasonable attorney fees for 202 hours at the usual and customary rate of $290/hour, in addition to ongoing fees incurred by the Board.

## II.     THE WESCO POLICY

Wesco issued a claims-made Lawyers Professional Liability Policy to the Roderick Firm for the period June 14, 2015 to June 14, 2016 under policy number WPP1096239 01 (the "Policy"). The Policy contains limits of liability of $2,000,000 for each claim and $4,000,000 in the aggregate, subject to a $15,000 per claim deductible.

The Policy contains the following Insuring Agreement:

**INSURING AGREEMENT**

**AmTrust North America**
An AmTrust Financial Company

A.    **Coverage**

The **Company** will pay on behalf of the **Insured** sums in excess of the deductible that the **Insured** shall become legally obligated to pay as **damages** because of a **claim** that is first made against the **Insured** and reported to the **Company** during the **policy period** or any Extended Reporting Period arising out of an act or omission in the performance of **legal services** by the **Insured** or by any person for whom the **Insured** is legally liable, provided that:

a.    prior to the inception date of the **policy period**, the **Insured** did not give notice under any other insurance policy of such **claim** or **related claim** or such act or omission or **related act or omission**; and

**b.**    prior to the inception date of the first policy, or if this policy has been continuously renewed, prior to the inception date of the first policy issued by the Company, no **Insured** knew of or could reasonably have foreseen that any such act or omission, or **related act or omission**, might be expected to be the basis of a **claim**.

The **Company** shall also pay **claim expenses** in connection with such **claim**.

The Policy contains the following definitions:

A.    "**Claim**" means a written or verbal demand received by the **Insured** for money or services arising out of an act or omission, including **personal injury**, in rendering or failing to render **legal services**. A demand shall include the service of suit or the institution of an arbitration proceeding against the **Insured**.

\*        \*        \*

D.    "**Damages**" means judgments, awards and settlement if negotiated with the assistance and approval of the Company. **Damages** do not include:

\*        \*        \*

3.        civil or criminal fines, sanctions, penalties or forfeitures, whether pursuant to federal, state or local law, statute, regulation or court rule and injuries that are a consequence of any of the foregoing;

\*        \*        \*

G.    "**Legal services**" mean:

1.        those services performed by an **Insured** for others as a lawyer, arbiter, mediator, title agent, a notary public, or member of a bar association, ethics, peer review or similar professional board or



committee but only if such services are performed for a fee that inures to the benefit of the **Named Insured** except that no fee need inure to the **Named Insured** where eleemosynary (pro bono) services are performed and approved by the **Named Insured**. Any title agency or company, on whose behalf the **Insured** acts as title agent or designated issuing attorney, is not an **Insured** under this Policy;

2. those services performed by an **Insured** as an administrator, conservator, receiver, executor, guardian, trustee or in a fiduciary capacity excluding acts of a "fiduciary" as defined under the Employee Retirement Income Security Act of 1974 and its amendments or any regulation or order issued pursuant thereto or any other similar state or local law. Services performed by an **Insured** as an administrator, executor or trustee must be services ordinarily rendered by a lawyer and with the approval of the **Named Insured** at the time of retention.

F. "**Insured**" means the **Named Insured**, **predecessor firm** and the persons or entities described below:

1. Any lawyer, partnership, professional corporation, professional association, limited liability corporation or limited liability partnership who is or becomes a partner, officer, director, stock-holder employee, associate, manager, member or salaried employee of the **Named Insured** during the **policy period** shown in the Declarations;

\* \* \*

L. "**Related act or omission**" means all acts or omissions in the rendering of **legal services** that are temporally, logically or causally connected by any common fact, circumstance, situation, transaction, event, advice or decision.

The Policy contains the following exclusion:

This Policy does not apply:

A. to any **claim** based on or arising out of any dishonest, fraudulent, criminal or malicious act or omission by an **Insured**, however, the **Company** shall provide the **Insured** with a defense of any **claim** based on or arising out of any dishonest, fraudulent, criminal or malicious act or omission by an Insured until the dishonest, fraudulent, criminal or malicious act or omission has been determined by adjudication, including regulatory ruling against or admission by such **Insured**; but providing such a defense will not waive any of the **Company's** rights under this policy;



The Policy contains a "Retroactive Date Limitation Endorsement - Individual" which states as follows:

> It is agreed that this policy shall not apply to **claims** arising out of acts or omissions or **related acts or omissions** in the rendering of or the failure to render **legal services** that occurred prior to the Retroactive Date for the **Insured(s)** listed below…
>
> | **Insured** | **Retroactive Date** |
> |---|---|
> | … | |
> | Bache, Daniel R. | January 15, 2015 |

## III.   DISCLAIMER OF COVERAGE

The Policy provides coverage for sums in excess of the deductible that the Insured shall become legally obligated to pay as damages because of a claim that is first made against the Insured and reported to the Company during the policy period arising out of an act or omission in the performance of legal services by the Insured. The definition of "damages" includes judgments, awards and settlements but excludes, in relevant part, "civil or criminal fines, sanctions, penalties or forfeitures, whether pursuant to federal, state or local law, statute, regulation or court rule and injuries that are a consequence of any of the foregoing." The only relief sought in the Fee Action is costs and attorney's fees pursuant to 20 U.S.C. § 1415(i)(3)(B)(i)(II), which provides that fees may be awarded against the attorney of a parent who files a complaint or subsequent cause of action that is frivolous, unreasonable, or without foundation, or who continued to litigate after the litigation clearly became frivolous, unreasonable, or without foundation. Such relief is specifically excluded from the definition of "damages" as "civil or criminal fines, sanctions, penalties or forfeitures, whether pursuant to federal, state or local law, statute, regulation or court rule and injuries that are a consequence of any of the foregoing." Accordingly, because the Fee Action does not seek any relief which constitutes "damages," no coverage is available under the Policy.

Further, the Policy's retroactive date endorsement provides that, with respect to Bache, the Policy does not apply to claims arising out of acts or omissions or related acts or omissions in the rendering of or the failure to render legal services that occurred prior to January 15, 2015. The Fee Action alleges that Bache signed the due process complaint filed on December 15, 2014 and engaged in other acts prior to January 15, 2015. Accordingly, no coverage is available for Bache to the extent the Fee Action arises out of acts or omissions or related acts or omissions in the rendering of or the failure to render legal services that occurred prior to January 15, 2015.

Moreover, we understand that Bache joined the Roderick Firm on January 15, 2015. To the extent the Fee Action concerns Bache's acts while not an attorney at the Roderick Firm, Bache does not qualify as an insured under the Policy. To the extent all of the requirements of the Policy insuring agreement are not satisfied, no coverage applies.



## AmTrust North America
### An AmTrust Financial Company

Finally, Exclusion A provides that the Policy does not cover any claims based on or arising out of any dishonest, fraudulent, criminal or malicious act or omission by an insured. The Fee Action alleges that the defendants continued to litigate claims that were frivolous, unreasonable and without foundation. Accordingly, there is no coverage under the Policy if an adjudication establishes that an insured committed a dishonest, fraudulent or malicious act or omission.

Wesco, therefore, respectfully disclaims any defense or indemnity under the Policy. Please be advised that nothing contained in this letter constitutes a waiver of any rights or defenses that Wesco has under the Policy. Wesco reserves all of its rights and defenses under the Policy and applicable law. Please also be advised that the coverage position taken by Wesco is based entirely upon presently available information. There may be other coverage defenses, not yet apparent, which may come to light as the matter proceeds. This letter is not intended to be a complete recitation of all of the potentially applicable provisions of the Policy, and Wesco expressly reserves the right to assert further coverage defenses and identify additional policy provisions in the future. We hereby reserve all of our rights and coverage defenses under all of the Policy's terms, exclusions, conditions, and definitions, as well as under applicable law. No action taken by us or on our behalf shall constitute either an admission of coverage under the Policy or an acknowledgment to pay damages in any judgment or settlement.

Should you have any questions, or if you have any additional information or documents that you believe we should consider, please contact me.

Very Truly Yours,


Bonnie L. Braverman, JD
Program Manager
AmTrust North America
135 S. LaSalle Suite 1925
Chicago IL, 60603
312-803-6079
Bonnie.braverman@amtrustgroup.com


cc:      Alta Professional Insurance Services