

**AmTrust North America**

An AmTrust Financial Company

April 18, 2017

*VIA E-MAIL & CERTIFIED MAIL -*
*RETURN RECEIPT REQUESTED*

Daniel R. Bache, Esq.                         Jason D. Wallace, Esq.
Wallace & Bache LLC                           Wallace & Bache LLC
270 S. Cleveland Massillon Road               270 S. Cleveland Massillon Road
Fairlawn, Ohio 44333                          Fairlawn, Ohio 44333
dan@gethelpohio.com                           jason@gethelpohio.com

|        |            |                                                          |
|--------|------------|----------------------------------------------------------|
| **Re:** | **Claim No.:** | **22539377** |
|        | **Insured:** | **Roderick Linton Belfance LLP** |
|        | **Policy No.:** | **WPP1096239 02** |
|        | **Claimant:** | **Cleveland Heights – University Heights School District Board of Education** |

Dear Messrs. Wallace and Bache:

This letter will provide the coverage position of Wesco Insurance Company ("Wesco") regarding the lawsuit filed by the Cleveland Heights – University Heights City School District Board of Education (the "Board") against Roderick Linton Belfance LLP (the "Roderick Firm"), Jason D. Wallace ("Wallace"), Daniel R. Bache ("Bache") and others in the lawsuit pending in the U.S. District Court for the Northern District of Ohio. Based upon our review of the information provided to us and the terms of the Wesco policy, Wesco must respectfully disclaim any duty to defend or indemnify Wallace or Bache in connection with the Board's lawsuit.

## I.    FACTUAL BACKGROUND

The Board has filed its "Complaint for Recovery of Fees Pursuant to the Individuals with Disabilities Education Act (IDEA)" in the United States District Court for the Northern District of Ohio, case no. 17-cv-0553 (the "Fee Action") against the Roderick Firm, Jason D. Wallace ("Wallace"), Daniel R. Bache ("Bache") and Wallace & Bache, LLC (the "Wallace Firm"). The Fee Action is brought pursuant to 20 U.S.C. § 1415(i)(3)(B)(i)(II) and (III), which provides that a

233 N Michigan Suite 1200
Chicago, IL 60601

court may award reasonable attorneys' fees to a prevailing party who is a local education agency against the attorneys of a parent who files a complaint or continues to litigate a matter that is frivolous, unreasonable or without foundation or whose complaint was presented for any improper purpose, such as to harass, cause unnecessary delay or needlessly increase the cost of litigation.

According to the complaint in the Fee Action, Wallace and Bache filed an IDEA due process complaint against the Board on February 23, 2015 on behalf of H.S., a minor child who was allegedly eligible to receive special education and related services, and his parent, LaRhonda Burton ("Burton"). The complaint asserts that Wallace and Bache were identified as counsel of record for the petitioners and the Roderick Firm was identified as the petitioners' law firm of record. According to the Fee Action complaint, the IDEA due process complaint was entirely without merit and that H.S. was not identified as or suspected to be a child with a disability. The complaint alleges that, on March 16, 2015, Wallace amended the due process complaint to add additional baseless and frivolous accusations, including that the student was performing poorly socially when the student was in fact seen as social and friendly by his teachers.

The complaint alleges that Wallace and Bache failed to appear for a March 17, 2015 meeting with Burton and the Board to consider Burton's request for an evaluation, causing the Board to incur additional unnecessary attorneys' fees and staff-related expenses. Subsequently, Burton filled out paperwork in connection with an assessment of H.S. under Section 504 of the Rehabilitation Act of 1973 and made other statements which indicated that, contrary to the allegations made by Wallace, Bache and the Roderick Firm in the due process complaint, H.S. was not emotionally disturbed, did not have behavioral issues and was functioning well at school.

The Fee Action complaint alleges that the Board acquiesced to Burton's demands and, on June 4, 2015, began developing a Section 504 plan for H.S.  Before the plan could be completed, however, the student and his family moved out of the school district and transferred schools. According to the complaint, Wallace, Bache and the Roderick Firm continued to litigate the amended due process complaint long after the Board agreed to prepare a Section 504 plan and the student moved out of the district. The complaint asserts that the Board filed a response on March 27, 2015 to the amended due process complaint which explained that the due process complaint was factually and legally without merit.

The complaint alleges that Wallace, Bache and the Roderick Firm continued to litigate the due process complaint, which contained false or inaccurate allegations regarding the Board's handling of Burton's request for an evaluation of H.S., failure to provide educational records or other information. The due process complaint also allegedly sought relief outside of the jurisdiction of the Impartial Hearing Officer ("IHO"). The complaint also alleges that Wallace, Bache and the Roderick Firm filed at least eight meritless motions and responses throughout the proceedings, prolonging the frivolous litigation. The complaint asserts that, on July 22, 2016, the IHO issued a Final Decision finding in favor of the Board on all claims presented and concluding that the Board did not violate federal law and that H.S. was never a child with a disability.

Subsequently, Wallace and Bache allegedly left the Roderick Firm and, while employed by the Wallace Firm, continued to litigate the IDEA due process complaint by appealing the IHO's decision on August 31, 2016 to the State Level Review Officer ("SLRO") appointed by the Ohio

Department of Education. The complaint alleges that Wallace, Bache and the Wallace Firm filed an improper Request for Reconsideration which was dismissed by the SLRO, requiring the Board to expend additional time and resources, including attorneys' fees. On November 16, 2016, the SLRO issued a upholding the IHO's final decision. The SLRO's decision allegedly found that there was no basis to suspect that H.S. had a disability.

The complaint asserts that the Board, as the prevailing party to the IDEA due process complaint, is entitled to fees pursuant to 20 U.S.C. § 1415(i)(3)(B)(i)(II) and (III) for work performed in relation to defendants' continued litigation of their meritless claims. Pursuant to 20 U.S.C. § 1415(i)(3)(B)(i)(II) and (III), the Board seeks to recover attorneys' fees in the amount of $64,000, monies the Board paid to the IHO in the amount of $64,000 and $18,000 in court reporter fees.

## II.  THE WESCO POLICY

Wesco issued a claims-made Lawyers Professional Liability Policy to the Roderick Firm for the period June 14, 2016 to June 14, 2017 under policy number WPP1096239 02 (the "Policy"). The Policy contains limits of liability of $2 million for each claim and $4 million in the aggregate, subject to a $15,000 per claim deductible.

The Policy contains the following Insuring Agreement:

**INSURING AGREEMENT**

A.  **Coverage**

The **Company** will pay on behalf of the **Insured** sums in excess of the deductible that the **Insured** shall become legally obligated to pay as **damages** because of a **claim** that is first made against the **Insured** and reported to the **Company** during the **policy period** or any Extended Reporting Period arising out of an act or omission in the performance of **legal services** by the **Insured** or by any person for whom the **Insured** is legally liable, provided that:

1.  prior to the inception date of the **policy period**, the **Insured** did not give notice under any other insurance policy of such **claim** or **related claim** or such act or omission or **related act or omission**; and

2.  prior to the inception date of the first policy, or if this policy has been continuously renewed, prior to the inception date of the first policy issued by the Company, no **Insured** knew of or could reasonably have foreseen that any such act or omission, or **related act or omission**, might be expected to be the basis of a **claim**.

The **Company** shall also pay **claim expenses** in connection with such **claim**.

The Policy contains the following definitions:

A. "**Claim**" means a written or verbal demand received by the **Insured** for money or services arising out of an act or omission, including **personal injury**, in rendering or failing to render **legal services**. A demand shall include the service of suit or the institution of an arbitration proceeding against the **Insured**.

\* \* \*

D. "**Damages**" means judgments, awards and settlement if negotiated with the assistance and approval of the Company. **Damages** do not include:

\* \* \*

3. civil or criminal fines, sanctions, penalties or forfeitures, whether pursuant to federal, state or local law, statute, regulation or court rule and injuries that are a consequence of any of the foregoing;

\* \* \*

G. "**Insured**" means the **Named Insured**, **predecessor firm** and the persons or entities described below:

1. Any lawyer, partnership, professional corporation, professional association, limited liability corporation or limited liability partnership who is or becomes a partner, officer, director, stockholder- employee, associate, manager, member or salaried employee of the **Named Insured** during the **policy period** shown in the Declarations;

2. Any lawyer previously affiliated with the **Named Insured** or a **predecessor firm** as a partner, officer, director, stockholder-employee, associate, manager, member or salaried employee but only for **legal services** performed on behalf of the **Named Insured** or a **predecessor firm** at the time of such affiliation;

\* \* \*

H. "**Legal services**" mean:

1. those services performed by an **Insured** for others as a lawyer, arbiter, mediator, title agent, a notary public, or member of a bar association, ethics, peer review or similar professional board or committee but only if such services are performed for a fee that inures to the benefit of the **Named Insured** except that no fee need inure to the **Named Insured** where eleemosynary (pro bono)

services are performed and approved by the **Named Insured**. Any title agency or company, on whose behalf the **Insured** acts as title agent or designated issuing attorney, is not an **Insured** under this Policy;

2. those services performed by an **Insured** as an administrator, conservator, receiver, executor, guardian, trustee or in a fiduciary capacity excluding acts of a "fiduciary" as defined under the Employee Retirement Income Security Act of 1974 and its amendments or any regulation or order issued pursuant thereto or any other similar state or local law. Services performed by an **Insured** as an administrator, executor or trustee must be services ordinarily rendered by a lawyer and with the approval of the **Named Insured** at the time of retention.

\* \* \*

M. "**Related act or omission**" means all acts or omissions in the rendering of **legal services** that are temporally, logically or causally connected by any common fact, circumstance, situation, transaction, event, advice or decision.

The Policy contains the following exclusion:

This Policy does not apply:

A. to any **claim** based on or arising out of any dishonest, fraudulent, criminal or malicious act or omission by an **Insured**, however, the **Company** shall provide the **Insured** with a defense of any **claim** based on or arising out of any dishonest, fraudulent, criminal or malicious act or omission by an Insured until the dishonest, fraudulent, criminal or malicious act or omission has been determined by adjudication, including regulatory ruling against or admission by such **Insured**; but providing such a defense will not waive any of the **Company's** rights under this policy;

## III. <u>DISCLAIMER OF COVERAGE</u>

The Policy provides coverage for sums in excess of the deductible that the Insured shall become legally obligated to pay as damages because of a claim that is first made against the Insured and reported to the Company during the policy period arising out of an act or omission in the performance of legal services by the Insured. The definition of "damages" includes judgments, awards and settlements but excludes, in relevant part, "civil or criminal fines, sanctions, penalties or forfeitures, whether pursuant to federal, state or local law, statute, regulation or court rule and injuries that are a consequence of any of the foregoing." The only relief sought in the Fee Action are the Board's costs and attorney's fees pursuant to 20 U.S.C. § 1415(i)(3)(B)(i)(II) and (III), which provide that fees may be awarded against the attorney of a parent who files a complaint or subsequent cause of action that is frivolous, unreasonable, or without foundation, or who continued

to litigate after the litigation clearly became frivolous, unreasonable, or without foundation or if the parent's complaint or subsequent cause of action was presented for any improper purpose, such as to harass, to cause unnecessary delay, or to needlessly increase the cost of litigation. Such relief is specifically excluded from the definition of "damages" as "civil or criminal fines, sanctions, penalties or forfeitures, whether pursuant to federal, state or local law, statute, regulation or court rule and injuries that are a consequence of any of the foregoing." Accordingly, because the Fee Action does not seek any relief which constitutes "damages," no coverage is available under the Policy.

Moreover, the Policy will not provide coverage if, prior to the inception date of the first policy issued by Wesco, or if this policy has been continuously renewed, prior to the inception date of the first policy issued by the Company, an insured knew of or could reasonably have foreseen that any act or omission, or "related act or omission," might be expected to be the basis of a claim. The inception date of the first policy issued to the Roderick Firm is June 14, 2015. The Fee Action asserts that, in its March 27, 2015 response to the March 16, 2015 amended due process complaint, the Board explained that the amended due process complaint was factually and legally without merit. Thus, to the extent any insured knew or could reasonably have foreseen that the filings might be expected to form the basis of a claim, no coverage will apply. To the extent all of the requirements of the Policy insuring agreement are not satisfied, no coverage applies.

We also understand that Bache and Wallace left the Roderick Firm on or around May 1, 2016. The Fee Action alleges that Bache and Wallace continued to litigate meritless claims while partners or employees of the Wallace Firm. To the extent the Fee Action concerns the acts of Bache and Wallace after leaving the Roderick Firm, Wallace and Bache do not qualify as insureds under the Policy. To the extent all of the requirements of the Policy insuring agreement are not satisfied, no coverage applies.

Finally, Exclusion A provides that the Policy does not cover any claims based on or arising out of any dishonest, fraudulent, criminal or malicious act or omission by an insured. The Fee Action alleges that the defendants continued to litigate claims that were frivolous, unreasonable and without foundation. Accordingly, there is no coverage under the Policy if an adjudication establishes that an insured committed a dishonest, fraudulent or malicious act or omission.

Wesco, therefore, continues to respectfully disclaim any defense or indemnity under the Policy. Please be advised that nothing contained in this letter constitutes a waiver of any rights or defenses that Wesco has under the Policy. Wesco reserves all of its rights and defenses under the Policy and applicable law. Please also be advised that the coverage position taken by Wesco is based entirely upon presently available information. There may be other coverage defenses, not yet apparent, which may come to light as the matter proceeds. This letter is not intended to be a complete recitation of all of the potentially applicable provisions of the Policy, and Wesco expressly reserves the right to assert further coverage defenses and identify additional policy provisions in the future. We hereby reserve all of our rights and coverage defenses under all of the Policy's terms, exclusions, conditions, and definitions, as well as under applicable law. No action taken by us or on our behalf shall constitute either an admission of coverage under the Policy or an acknowledgment to pay damages in any judgment or settlement.

Should you have any questions, or if you have any additional information or documents that you believe we should consider, please contact me.

Sincerely,

Bonnie L. Braverman, JD
AmTrust North America
Program Manager
233 N. Michigan Avenue, 12th Floor
Chicago, IL 60601
312-803-6079
Bonnie.Braverman@amtrustgrouop.com

cc:    Alta Professional Insurance Services